**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:22-cv-00176 |
| Plaintiff, | |
| v. | **STIPULATED ORDER FOR PERMANENT INJUNCTION, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF** |
| VISION PATH, INC., a corporation, also d/b/a Hubble Contacts, | |
| Defendant. | |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("Commission") filed its Complaint for Civil Penalties, Permanent Injunction, Monetary Relief and Other Relief ("Complaint") in this matter, pursuant to Sections 9(a) and 9(b) of the Fairness to Contact Lens Consumers Act ("FCLCA"), 15 U.S.C. §§ 7608(a) and (b), and Sections 5(a)(1), 5(m)(1)(A), 13(b), 16(a)(1), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A),53(b), 56(a)(1), and 57b. Defendant has waived service of the summons and the Complaint. Plaintiff and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant engaged in unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and disseminated deceptive advertisements in or affecting commerce for the purpose of inducing, or which were likely to induce, the purchase of food, drugs, devices, cosmetics, or services as defined in Section 12 of the FTC Act, 15 U.S.C. § 52, in connection with the sale of contact lenses.

3.      The Complaint further charges that Defendant violated the Contact Lens Rule, 16 CFR § 315, by selling contact lenses not in accordance with certain requirements of the Rule.

4.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

5.      Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear its own costs and attorney fees.

6.      Defendant and Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

7.      This Order relates to activities in or affecting interstate commerce, including such acts or practices involving foreign commerce that cause or are likely to cause reasonably foreseeable injury within the United States or involve material conduct occurring within the United States.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.      "**Business Hour**" means an hour between 9 a.m. and 5 p.m., during a weekday (Monday

through Friday), excluding Federal holidays. "Business Hour" also may include, at the seller's

option, a Prescriber's regular Business Hours on Saturdays, provided that the seller has actual

knowledge of these hours. "Business Hour" shall be determined based on the time zone of the

Prescriber.

2.      "**Clear(ly) and Prominent(ly)**" means that a required disclosure is difficult to miss (i.e.

easily noticeable) and easily understandable by ordinary consumers, including in all the

following ways:

      A.      In any communication that is solely visual or solely audible, the disclosure must

          be made through the same means through which the communication is presented.

          In any communication made through both visual and audible means, such as a

          television advertisement, the disclosure must be presented simultaneously in both

          the visual and audible portions of the communication even if the representation

          requiring the disclosure is made in only one means.

      B.      A visual disclosure, by its size, contrast, location, the length of time it appears,

          and other characteristics, must stand out from any accompanying text or other

          visual elements so that it is easily noticed, read, and understood.

      C.      An audible disclosure, including by telephone or streaming video, must be

          delivered in a volume, speed, and cadence sufficient for ordinary consumers to

          easily hear and understand it.

      D.      In any communication using an interactive electronic medium, such as the

          Internet or software, the disclosure must be unavoidable.

E.     The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

F.     The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

G.     The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

H.     When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

3.     "**Close Proximity**" means that the disclosure is very near the triggering representation. For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

4.     "**Contact Lens**" means any contact lens for which State or Federal law requires a prescription.

5.     "**Contact Lens Fitting**" means the process that begins after an initial eye examination for contact lenses and ends when a successful fit has been achieved or, in the case of a renewal prescription, ends when the Prescriber determines that no change in the existing prescription is required, and such term may include:

A.     An examination to determine the lens specifications;

B.     Except in the case of a renewal of a contact lens prescription, an initial evaluation of the fit of the contact lens on the eye; and

4

      C.        Medically necessary follow up examinations.

6.      **"Contact Lens Prescription"** means a prescription, issued in accordance with State and Federal law that contains sufficient information for the complete and accurate filling of a prescription for contact lenses, including the following:

      A.        The name of the patient;

      B.        The date of the examination;

      C.        The issue date and expiration date of the prescription;

      D.        The name, postal address, telephone number, and facsimile telephone number of the Prescriber;

      E.        The power, material or manufacturer or both of the prescribed contact lens;

      F.        The base curve or appropriate designation of the prescribed contact lens; and

      G.        In the case of a Private Label Contact Lens, the name of the manufacturer, trade name of the private label brand, and, if applicable, trade name of the equivalent brand name.

7.      **"Defendant"** means Vision Path, Inc., also d/b/a Hubble Contacts, and its successors and assigns.

8.      **"Direct Communication"** means completed communication by telephone, facsimile, or electronic mail.

9.      **"Eight (8) Business Hours"** shall be calculated from the time the Prescriber receives the prescription verification information from the seller, and shall conclude when Eight (8) Business Hours have elapsed. For verification requests received by a Prescriber during non-Business Hours, the calculation of "Eight (8) Business Hours" shall begin at 9 a.m. on the next weekday

that is not a Federal holiday or, if applicable, on Saturday at the beginning of the Prescriber's actual Business Hours.

10.     "**Prescriber**" means, with respect to Contact Lens Prescriptions, an ophthalmologist, optometrist, or other person permitted under State law to issue prescriptions for contact lenses in compliance with any applicable requirements established by the United States Food and Drug Administration. "Other person," for purposes of this definition, includes a dispensing optician who is permitted under State law to issue prescriptions and who is authorized or permitted under State law to perform Contact Lens Fitting services.

11.     "**Private Label Contact Lenses**" mean contact lenses that are sold under the label of a seller where the contact lenses are identical to lenses made by the same manufacturer but sold under the labels of other sellers.

12.     "**Unexpected Material Connection**" means any relationship that might materially affect the weight or credibility of a testimonial or endorsement and that would not reasonably be expected by consumers.

## I. INJUNCTION CONCERNING SELLING CONTACT LENSES

**IT IS ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of Contact Lenses are permanently restrained and enjoined from selling and delivering Contact Lenses to a consumer:

A.     Without a Contact Lens Prescription for that consumer that is either:

1.    Presented to Defendant by the consumer or Prescriber directly
       or by facsimile; or

2.    Verified by Direct Communication with the Prescriber via

     a.     facsimile;

     b.     telephone calls; or

     c.     electronic mail.

B.    If informed by a Prescriber that the Contact Lens Prescription is inaccurate,
       expired, or otherwise invalid, *unless*

1.    the Prescriber corrects the prescription and the sale is of the Contact
       Lenses specified in the correction, or

2.    the sale occurs at least Eight (8) Business Hours after the verification and
       prior to the Prescriber informing Defendant that the Contact Lens
       Prescription is inaccurate, expired, or otherwise invalid.

## II. PRESCRIPTION PRESENTATION REQUIREMENT

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of Contact Lenses shall provide a prominent method, and a Clear and Prominent disclosure of that method, for the patient to present the seller with a copy of the patient's Contact Lens Prescription. Such method and the disclosure shall be provided prior to requesting a Prescriber's contact information for verification of the prescription; provided, however, in the case of an order placed by telephone, a seller shall comply by providing a disclosure of the method prior to requesting a Prescriber's contact information for verification of a prescription. The method to

present the Contact Lens Prescription shall be provided through (i) the same medium by which the order is placed, or (ii) electronic mail, text message, or file upload.

### III. PROHIBITION AGAINST PRESCRIPTION ALTERATION AND PRESCRIPTION VERIFICATION REQUIREMENTS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of Contact Lenses:

A.    Shall not alter a Contact Lens Prescription. In the context of prescription verification, alteration includes, but is not limited to, providing the Prescriber with the name of a manufacturer or brand other than that specified by the patient's Contact Lens Prescription, unless such name is provided because the patient entered or orally provided it when asked for the manufacturer or brand listed on the patient's Contact Lens Prescription. Notwithstanding the preceding sentences, for Private Label Contact Lenses, a seller may substitute for Contact Lenses specified on a prescription identical Contact Lenses that the same company manufactures and sells under different labels.

B.    Shall only submit a verification request for the brand of Contact Lenses:

1.    That is listed on a consumer's Contact Lens Prescription that Defendant is in receipt of, or

2.    After meeting the exception described in Subsection A. of this Section.

C.    In complying with Subsection A. of this Section, shall not direct, encourage,

motivate, or suggest, either expressly or by implication, that a consumer enter any manufacturer or brand other than that listed on the patient's Contact Lens Prescription;

D.     Shall not submit a verification request without:

    1.     including the (i) name of the company selling the lenses; and (ii) the brand of the Contact Lenses being verified; and

    2.     confirming that the fax number, phone number, or email address to which the verification request is being submitted is for a Prescriber; and

E.     In addition to the requirements of Subsection D. of this Section, when seeking verification of a Contact Lens Prescription, shall provide the Prescriber with the following information:

    1.     The patient's full name and address;

    2.     The Contact Lens power, manufacturer, base curve or appropriate designation, and diameter when appropriate;

    3.     The quantity of lenses ordered;

    4.     The date of patient request;

    5.     The date and time of verification request;

    6.     The name of a contact person at the seller's company, including facsimile and telephone numbers; and

    7.     If opting to include the Prescriber's regular Business Hours on Saturdays as "Business Hours" when counting the Eight (8) Business Hours for waiting to sell, shall provide a clear statement of the Prescriber's regular Saturday Business Hours.

F.      Shall, during the Eight (8) Business Hours after a verification request, provide a reasonable opportunity for the Prescriber to communicate with the Defendant concerning the verification request.

## IV. INJUNCTION CONCERNING RECORDS OF CONTACT LENS SALES

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of Contact Lenses shall maintain for a period of not less than three (3) years:

A.      For prescriptions presented to Defendant as set forth in Subsection A.1 of the Section titled Injunction Concerning Selling Contact Lenses, the Contact Lens Prescription itself, or a facsimile or digital version thereof;

B.      For verification requests made by Defendant as set forth in Subsections A.2.a and c of the Section titled Injunction Concerning Selling Contact Lenses, a copy of the verification request, including the information provided to the Prescriber regarding the consumer, and confirmation of the completed transmission thereof, including a record of the date and time the request was made. For verification requests made by Defendant as set forth in Subsection A.2.b of the Section titled Injunction Concerning Selling Contact Lenses, a log: (a) Describing the information provided in Subsection E. of the Section titled Prohibition Against Prescription Alteration and Verification Requirements; (b) Setting forth the date and the time the request was made, (c) Indicating how the call was completed, and (d) Listing the names of the individuals who participated in the call;

C.     For verification requests made by Defendant as set forth in in Subsections A.2.b of the Section titled Injunction Concerning Selling Contact Lenses, if the request is made via automated telephone message, an audio recording of the entire call; and

D.     For communications from the Prescriber, including prescription verifications:

    1.     If the communication occurs via facsimile or email, a copy of the communication and a record of the time and date it was received;

    2.     If the communication occurs via telephone, (a) a log (i) describing the information communicated; (ii) setting forth the date and time that the information was received; and (iii) listing the name of the individuals who participated in the call; and (b) a recording of the call.

## V. MONITORING OF VERIFICATION PROCESS AND RESPONSES

**IT IS FURTHER ORDERED** that, within 90 days of the date of entry of this Order, Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of Contact Lenses, shall:

A.     Establish, implement, and thereafter maintain a system, documented in writing, to monitor and review Contact Lens verification procedures, to ensure compliance with: (1) Subsections A.2 and B. of the Section titled Injunctions Concerning Selling Contact Lenses, (2) Section titled Prohibition Against Prescription Alteration and Prescription Verification Requirements, and (3) Subsections B. and C. of the Section titled Injunction Concerning Records of Contact Lens Sales. The system shall include, at a minimum, monitoring and reviewing verification

11

requests to ensure: (i) the quality and content of such requests; (ii) the agent used a permissible form of communication; and (iii) the agent directed the request to a Prescriber or Prescriber's office; and

B.      Create reports showing the results of the monitoring required by Subsection A. of this Section.

## VI. INJUNCTION CONCERNING MISREPRESENTATIONS IN VIOLATION OF SECTIONS 5 AND 12 OF THE FTC ACT

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from making, or assisting others in making, any misrepresentation, expressly or by implication:

A.      That consumers will receive Contact Lenses with valid and accurate prescriptions as prescribed by consumers' eye care practitioners; or

B.      About the status of any person providing a review or endorsement of a good or service, including a misrepresentation that the reviewer or endorser is an unbiased or ordinary user of the good or service.

## VII. REQUIRED DISCLOSURES OF UNEXPECTED MATERIAL CONNECTIONS

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, about any endorser of such good or service without disclosing, Clearly and Prominently, and in

Close Proximity to that representation, any Unexpected Material Connection between such endorser and (1) Defendant; or (2) any other individual or entity affiliated with the good or service.

### VIII. NOTIFICATION REGARDING PREVIOUSLY POSTED REVIEWS

**IT IS FURTHER ORDERED** that within 30 days of the date of entry of this Order, Defendant must notify the Better Business Bureau and HighYa that Defendant or its agents provided products in exchange for reviews of Hubble Contact Lenses that appeared on www.bbb.org/us/ny/new-york and www.highya.com, respectively. The notifications must (A) be sent by email to an email address to be provided by FTC staff; (B) have the subject line: U.S. v. Vision Path, Inc.; (C) identify, separately for the BBB and HighYa, the reviews for which Defendant provided free product by including, at a minimum, the date the review was posted and the name of the reviewer; (D) attach copies of the Complaint and of this Order; and (E) copy Debrief@ftc.gov.

### IX. MONITORING OF ENDORSERS

**IT IS FURTHER ORDERED** that within 90 days of the date of entry of this Order, Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, must take steps sufficient to ensure compliance with the Subsection B. of the Section of this Order titled Injunction Concerning Misrepresentations In Violation of Sections 5 and 12 of the FTC Act and the Section of this Order titled Required Disclosures Of Unexpected Material Connections. Such steps shall include, at a minimum:

A.      Providing each such reviewer or endorser with a clear statement of his or her responsibilities to disclose Clearly and Prominently and in Close Proximity to the endorsement, in any review, online video, social media posting, or other communication endorsing the good or service, the reviewer or endorser's Unexpected Material Connection to Defendant, or any other individual or entity affiliated with the good or service; and obtaining from each such reviewer or endorser a signed and dated statement acknowledging receipt of that statement and expressly agreeing to comply with it. For the purpose of this subsection, the term "signed" may include a verifiable electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable Federal law or State contract law;

B.      Establishing, implementing, and thereafter maintaining a system to monitor and review the representations and disclosures of reviewers and endorsers with any Unexpected Material Connection to Defendant, or any other individual or entity affiliated with the good or service to ensure compliance with the Subsection B. of the Section of this Order titled Injunctions Concerning Misrepresentations in Violation of Sections 5 and 12 of the FTC Act and the Section of this Order titled Required Disclosures Of Unexpected Material Connections. The system shall include, at a minimum, monitoring and reviewing the endorsers' reviews, online videos and social media postings;

C.      In the event an Unexpected Material Connection is not disclosed, contacting each reviewer or endorser to request such a disclosure. If such disclosure is not made or the review or endorsement is not removed, Defendant shall contact the platform on which the review or endorsement appears requesting its removal; and

D.      Creating reports showing the results of the monitoring required by Subsections B. and C. of this Section.

## X.  MONETARY JUDGMENT FOR CIVIL PENALTY

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) is entered in favor of Plaintiff against Vision Path, Inc., also d/b/a Hubble Contacts as a civil penalty.

B.      Vision Path, Inc., also d/b/a Hubble Contacts is ordered to pay to the Plaintiff, by making payment to the Treasurer of the United States, One Million Five Hundred Thousand Dollars ($1,500,000), which as Defendant stipulates, is held in a separate custodial account for no purpose other than payment to Plaintiff. This payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of Plaintiff and be designated as a civil penalty payment.

## XI.  MONETARY JUDGMENT FOR CONSUMER REDRESS
**IT IS FURTHER ORDERED** that:

A.  Judgment in the amount of Two Million Dollars ($2,000,000.00) is entered in favor of Plaintiff against Vision Path, Inc., also d/b/a Hubble Contacts as redress.

B.  Vision Path, Inc., also d/b/a Hubble Contacts is ordered to pay to the Plaintiff, by making payment to the Treasurer of the United States, Two Million Dollars ($2,000,000), which as Defendant stipulates, is held in a separate custodial account for no purpose other than payment to Plaintiff. This payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of Plaintiff and be designated as a redress payment.

## XII.  ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED that:**

A.      Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel for such purposes.

D.      Defendant acknowledges that its Taxpayer Identification Number, which it previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.      All money that the Plaintiff or Commission receives for consumer redress pursuant to this Order may be deposited into a fund administered by Plaintiff or the Commission

16

or its designee to be used for relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of Plaintiff or the Commission decides that direct redress to consumers is wholly or partially impracticable, or if money remains after the redress is completed, Plaintiff or the Commission may apply any remaining money for such relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for such relief is to be deposited to the U.S. Treasury as additional civil penalties. Defendant has no right to challenge any actions Plaintiff, the Commission, or their representatives may take pursuant to this Subsection.

## XIII.  CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## XIV. NOTICE TO  CUSTOMERS

**IT IS FURTHER ORDERED** that,

  A.   Within 30 days of the entry of this Order, Defendant send by
       electronic mail a notice in the exact wording and format shown in Attachment
       A, to any customer who (1) ordered Hubble contact lenses at any time in the

six months preceding October 17, 2020, and (2) has received any Hubble contact lenses in the six month period preceding the date of entry of this Order. The subject line of the email notice must state "Hubble Contacts Require a Prescription." The email must not contain any other message concerning its goods or services, or include any attachments.

B.      Defendant must resend by electronic mail the form shown in Attachment A one to three days after sending the initial notice to the same customers, or to those customers who did not open the initial notice.

C.      Defendant must collect and maintain the following metrics on the initial and subsequent emailed notices:

      1.      Unique open-rate (unique opens divided by number of emails successfully delivered);

      2.      Click-to-open rate (unique clicks on ftc.gov/contacts divided by the number of emails opened); and

      3.      Unique click rate (unique clicks on ftc.gov/contacts divided by the number of emails successfully delivered).

D.      Defendant must report to the Commission the metrics listed in Subsection C of this Section within 30 days of sending the second notice.

## XV. ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgments of receipt of this Order:

A.      Defendant, within 7 days of entry of this Order, must submit to the

18

Commission an acknowledgment of receipt of this Order sworn under penalty of perjury;

B.      For 10 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XVI.  COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission:

A.      One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate

with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means of advertising, marketing, and sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.    For 10 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: Defendant must report any change in: (a) any designated point of contact; or (b) its structure or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.    Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against it within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the

20

United States of America that the foregoing is true and correct. Executed on: "

and supplying the date, signatory's full name, title (if applicable), and signature.

E.  Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to

DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal

Service)

to: Associate Director for Enforcement, Bureau of Consumer Protection,

Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC

20580. The subject line must begin: U.S. v. Vision Path, Inc.

## XVII.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant must create certain records for 10 years

after entry of the Order, and retain each such record for 5 years. Specifically, Defendant must

create and retain the following records:

A.  accounting records showing the revenues from all products sold;

B.  personnel records showing, for each person providing services, whether as an

employee or otherwise, that person's: name; addresses; telephone numbers; job

title or position; dates of service; and (if applicable) the reason for termination;

C.  records of all consumer complaints and refund requests, whether received

directly or indirectly, such as through a third party, and any response; and

D.  all records necessary to demonstrate full compliance with each Section of this

Order, including all submissions to the Commission.

## XVIII.  COMPLIANCE  MONITORING

**IT IS FURTHER ORDERED** that for the purpose of monitoring Defendant's

compliance with this Order:

A.    Within 14 days of receipt of a written request from a representative of the Plaintiff
or the Commission, Defendant must: submit additional compliance reports or other
requested information, which must be sworn under penalty of perjury; appear for
depositions; and produce documents for inspection and copying.  The Commission
and Plaintiff are also authorized to obtain discovery, without further leave of court,
using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30
(including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission and Plaintiff are authorized
to communicate directly with Defendant. Defendant must permit
representatives of the Commission and Plaintiff to interview any employee or
other person affiliated with Defendant who has agreed to such an interview.
The person interviewed may have counsel present.

C.    The Commission and Plaintiff may use all other lawful means, including
posing, through its representatives as consumers, suppliers, or other individuals
or entities, to Defendant or any individual or entity affiliated with Defendant,
without the necessity of identification or prior notice. Nothing in this Order
limits the Commission's lawful use of compulsory process, pursuant to Sections
9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIX.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**SO ORDERED** this  28  day of _____January_____ , 2022.

\
_____

UNITED STATES DISTRICT JUDGE

ATTACHMENT A
[EMAIL NOTICE]
[EMAIL CONTENT]
IMPORTANT NOTICE ABOUT **HUBBLE** CONTACT LENSES

Dear Hubble customer:

We are writing as part of a settlement with the Federal Trade Commission (FTC) because, as a customer of Hubble (Vision Path, Inc.), you may have received Hubble contact lenses that were not fit on your eyes or prescribed. The FTC says that we may not have properly verified your prescription with your doctor before sending you contact lenses.

You shouldn't wear contact lenses that weren't prescribed for you or properly fitted for your eyes because it could cause injuries or other complications.  And you should always check with your eye doctor before trying a new type or brand of contact lenses.

For more information, visit www.ftc.gov/contacts.  To learn more about the FTC's case, you can visit [insert link to public case site].

[Vision Path, Inc. signatory]



**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**THE UNITED STATES OF AMERICA**

DATED:  January 25, 2022

    BRIAN M. BOYNTON
    Acting Assistant Attorney General

    ARUN  G. RAO
    Deputy Assistant Attorney General

    GUSTAV W. EYLER
    (D.C. Bar No. 997162)
    Director
    Consumer Protection Branch

    LISA K.  HSIAO
    (D.C. Bar No. 444890)
    Assistant Director
    Consumer Protection Branch

    /s/ Claude F. Scott
    CLAUDE F. SCOTT
    (D.C. Bar No. 414906)
    Senior Litigation Counsel
    Consumer Protection Branch
    U.S. Department of Justice
    450 5th Street, NW
    Washington, DC 20530
    Telephone: (202) 514-9471
    Facsimile: (202) 514-8742
    Email: Claude.F.Scott@usdoj.gov

**FEDERAL TRADE COMMISSION**

_Alysa S Bernstein_
_____          Date:  <u>January 10, 2022</u>
Alysa S. Bernstein, Attorney
Paul Spelman,  Attorney
Federal Trade Commission  Washington,
DC 20580
Phone: 202-326-3289,  202-326-2487
Fax: 202-326-3259
abernstein@ftc.gov
pspelman@ftc.gov


**FOR DEFENDANTS:**

_____          Date:  <u>September 17,  2021</u>
Edith Ramirez, Esq.
Hogan Lovells US LLP
Columbia  Square
555 Thirteenth Street, NW
Washington,  D.C. 20004
Phone: 202-637-5509
Fax: 202-637-5910
edith.ramirez@hoganlovells.com
COUNSEL FOR VISION PATH, INC.


**DEFENDANT: VISION PATH, INC.**


_____          Date: <u>September 17, 2021</u>
Officer of Vision  Path, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I emailed a true and correct copy of the foregoing document to

Edith Ramirez, attorney for Defendant, on January 25, 2022.  Ms. Ramirez has agreed to

accept service of this document by email on behalf of Defendant.

<u>/s/ Claude F. Scott, Jr.</u>
CLAUDE F. SCOTT, JR.
(D.C. Bar No. 414906)
Senior Litigation Counsel
Consumer Protection Branch
U.S. Department of Justice